**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **21-01260-jw**

**ORDER**

The relief set forth on the following pages, for a total of 8 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**11/10/2021**



*John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 11/10/2021

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| IN RE: | C/A No. 21-01260-JW |
|---|---|
| Carla Lee Marshall Anderson | Chapter 13 |
| Debtor. | |

### ORDER REGARDING SALES PROCEEDS AND PLAN COMPLETION

This matter comes before the Court for a hearing relating to the use of non-exempt sales proceeds from the post-confirmation sale of real property by Carla Lee Marshall Anderson ("Debtor"). An Order was entered to permit the sale on October 13, 2021, requiring that all funds above reasonable costs, satisfaction of liens and the Debtor's exemptions would be held in trust by the Debtor's attorney until further order. The hearing to determine use of those funds was held on October 21, 2021.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334, and this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O).[1]

### FINDINGS OF FACT

1. The above case was filed under Chapter 13 on May 6, 2021. The Schedules and Statements were filed with the Petition.

2. Schedule A shows the Debtor's interest in property at 104 Monsarret Ave., Goose Creek, SC 29445 ("Debtor's residence"), valued at $235,000.00. Debtor provided a real estate tax assessment in support of this value. Debtor's remaining personal property was valued at $11,200, much of which was claimed as exempt.

3. In Schedule C, the Debtor claims exemptions in the residence totaling $68,500.00.

---

[1] To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

4.      Schedules E/F show a total of $75,027 in unsecured debt owed by the Debtor on the date of filing. A further review of the official claims register demonstrates total claims, excluding the mortgage claim on the residence, to be $73,622.

5.      Schedule I and the Statement of Current Monthly Income reflect that the Debtor is below median income, with her sole sources of income being her Social Security income of $1606 per month and her dependent, disabled daughter's Social Security income of $803 per month. In 2020, Debtor and her dependent daughter had a total gross income of only $19,056—all from Social Security payments.

6.      At the time of confirmation, the Chapter 13 Trustee ("the Trustee") and Debtor agreed that there was no value in Debtor's property above Debtor's exemptions that would be available to unsecured creditors in a hypothetical chapter 7 case.

7.      The Chapter 13 Plan was filed May 6, 2021. The plan required Debtor to pay $150.00 per month for 36 months for a total plan base payment to creditors of $5400 over the term of the plan. The plan also provided for the surrender of the Debtor's residence to Wells Fargo, NA.[2]

8.      The Chapter 13 Plan was confirmed June 25, 2021.

9.      On September 3, 2021, less than three (3) months after confirmation, the Debtor's attorney contacted the Trustee to notify the Trustee that the Debtor had obtained a contract for the sale of the property for $270,000.00, which would net the Debtor approximately $35,000.00 above applicable exemptions. The Trustee and Debtor's counsel reached an agreement to permit the early payoff of the plan base according to the terms of a proposed order authorizing the sale of Debtor's

---

[2] For context, applying the base payments to the total allowed claims was estimated to pay approximately 2% to the pool of unsecured creditors although no certain percentage was specified or required.

2

residence and which directed the non-exempt proceeds from the sale to be paid to the Trustee for the benefit of creditors.

10. On September 7, 2021, Debtor filed a Notice and Application for Sale of Property with a proposed order reflecting that the funds to be realized from the sale, in excess of the closing costs and Debtor's exemption, "may constitute a substantial amount not anticipated at confirmation justifying an increase to the amount paid in the plan." The proposed order additionally provided that "All funds above the confirmed base will be added to the confirmed plan base and will be distributed to the Trustee in accordance with the terms of the confirmed plan." [3]

11. A revised order authorizing the sale was entered on October 13, 2021, with the funds above exemptions to be held in trust by Debtor's counsel pending further order of the Court.

12. On October 21, 2021, a hearing was held, at which the parties announced to the Court that the closing took place, that all applicable liens were satisfied and Debtor received her full exemption amount, and after reasonable closing costs, the net proceeds of $34,489.47 were being held by Debtor's attorney pending further order.

13. The deadline to file governmental claims passed on November 2, 2021, and no other claims have been filed.

## CONCLUSIONS OF LAW

The confirmed Chapter 13 plan in this case did not designate a specific percentage payment to unsecured creditors, but instead sets a total of payments that will be made by Debtor during the life of the plan.[4] Such a plan is referred to as a base or pot plan. In such a plan, when a debtor has

---

[3] This provision of the proposed order was struck by the Court before entry of the order authorizing the sale on October 13, 2021 and a further hearing was set to consider the effect of that provision.

[4] Section 5.1 of the confirmed plan provides: Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata by the trustee **to the extent funds are available** after payment of all other allowed claims. (*Emphasis added*.) The debtor estimates payments of less than 100% of claims.

3

paid the base amount, the plan is consummated, and the debtor is entitled to a full payment discharge. In such a plan, creditors do not expect full payment or a definite percentage of their allowed claims. In this case creditors were to share in the total payment of $5400 to the extent of available funds. To increase the payment to creditors beyond the base amount, the confirmed plan must be modified.

Section 1329(a)(1) of the Bankruptcy Code provides that:

At any time after confirmation of the plan but before the completion of payments under the plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to---
(1)    increase or reduce the amount of payments on claims of a particular class provided for by the plan.

In the Fourth Circuit, in order to determine whether to modify a confirmed Chapter 13 plan to increase plan payments, the bankruptcy court must first determine if the debtor has experienced a substantial and unanticipated change in his post-confirmation financial condition. *See In re Murphy,* 474 F.3d 143, 150 (4th Cir. 2007);[5] *In re Arnold,* 869 F.2d 240, 242 (4th Cir. 1989).

In this case, neither the Trustee nor Debtor filed a motion to modify the plan, relying instead upon an agreement included in the Notice and Application for Sale of Property and proposed order that a substantial and unanticipated change in Debtor's financial condition had occurred which allowed an increase in the confirmed plan base by consent.  To achieve such a result procedurally, the parties rely upon Section 2.1 of the confirmed plan, which, after stating the monthly payment amount and term, provides: "The debtor and trustee may stipulate to a higher payment **in order to**

---

[5] This doctrine, which is applied in this Circuit per *In re Arnold,* ensures that confirmation orders will be accorded the necessary degree of finality, preventing parties from seeking to modify plans after minor and anticipated changes in the debtor's financial condition take place. *In re Murphy,* 474 F.3d. at 149.

4

**provide adequate funding of the plan** without the necessity of a modification to the plan. The stipulation is effective upon filing with the Court. Additional monthly payments will be made **to the extent necessary to make the payments to creditors specified in this plan**."

As Debtor is below median, the applicable commitment period in this case is 36 months from the date that the first payment after confirmation was due, which was July 5, 2021, and therefore, the sales proceeds were received within the applicable commitment period for payment under the plan. At the continued hearing, the Court determined that the desire to pay non-exempt proceeds to creditors was a voluntary decision by Debtor and that the change in value of Debtor's residence and the resulting surplus of sales proceeds constituted a change in financial circumstances that is substantial and unanticipated.[6] Therefore, a modified plan providing for an increase in the base payments could be permitted to the extent of the non-exempt funds. Payment of those funds will be sufficient to complete the terms of the modified confirmed plan and allow Debtor to qualify for a discharge under 11 U.S.C. § 1328(a).

However, the procedure for modification of a confirmed chapter 13 plan is specified by Fed. R. Bankr. P. 3015(h), which requires that a request to modify that identifies the proponent of the modification must be filed along with the proposed modification. Furthermore, to be approved, the modification must also meet the requirements of §§ 1322(a), 1322(b), 1323(c), and 1325(a) and provide a 21 day notice of an opportunity to object and a hearing on any objection to debtor, debtor's counsel, the trustee and all creditors, unless the Court orders otherwise with respect to creditors who are not affected by the proposed modification.

Despite its desire to save costs and delay for the parties, the Court in this case cannot agree that the language of Section 2.1 of the confirmed plan supersedes the requirements of Fed. R.

---

[6] According to Debtor's counsel, Debtor had been informed that she could voluntarily dismiss her case and retain all sales proceeds, but she declined.

5

Bankr. P. 3015(h) or provides an appropriate procedure for the Court to determine the existence of a substantial and unanticipated change in a debtor's financial condition. It is the Court's recollection that the provision allowing an increase in plan payments by stipulation was intended to allow minor payment adjustments often necessary in conduit plans with adjustable interest rates and/or due to increases in tax and insurance escrows. Such a stipulation may also be used for an increase in payments under a percentage or 100% percent plan in the event an allowed claim is filed after confirmation. This Court does not agree that the stipulation, often called by its local form name "Stipulation of Payment Increase," was intended to supplant or satisfy the necessary burden to establish a substantial and unanticipated change in the debtor's financial condition. The plain language of Section 2.1 anticipates a "stipulation to a higher payment in order to provide adequate funding of the plan" before the court at that time. The stipulation procedure was not intended to meet the high burden for post confirmation plan modification set by the Fourth Circuit.

Therefore, in order to modify the plan in this case either the Trustee or Debtor should comply with the requirements of Fed. R. Bankr. P. 3015(h) by filing a motion to modify or modified plan before distribution of the sales proceeds by the Trustee. However, since this was an issue of first impression and the Court has sufficiently examined the circumstances at a hearing, the Court anticipates approving the proposed modification upon the filing of a motion to modify or modified plan based upon the present record before it and without further notice upon the following factors:

1. All creditors received notice of the Application of Sale which provided that the non-exempt proceeds would be paid to the Trustee for the benefit of creditors;

2. The additional payments to creditors provide a significant benefit to them and do not detrimentally affect them which therefore allows this Court to forego additional notice and an opportunity to object and be heard.

3. The increase in value of the residence was determined at a hearing to be an unanticipated and substantial change in Debtor's financial condition especially when consideration is given to the fact that the initial confirmed plan proposed to surrender the property;

4. Debtor cannot be compelled to make further monthly plan payments since her only source of income is Social Security payments which are excluded from projected disposable income and cannot be reached by her creditors, *see Mort Ranta v. Gorman,* 721 F.3d 241, 250 (4th Cir. 2013);

5. A proposed modification allowing the payment of the non-exempt sale proceeds would appear to meet the requirements of 11 U.S.C. §§ 1322(a), 1322(b), 1323(c) and 1325(a) and would be confirmable; and

6. Upon approval of a motion to modify the plan and the distribution contemplated herein, it appears Debtor may seek a discharge of debts pursuant to 11 U.S.C. § 1328(a) and the Trustee may complete administration of the case to its closure.

**AND IT IS SO ORDERED**.